## Chambers *against* Wilson.

"I give and devise to any one of my brothers' or sisters' children that shall or may come from Ireland first, with all the .benefits thereof, or that may arise therefrom, to hold to his or her heirs and assigns for ever, if so be they shall or do come within the term of six years after they shall get lawful word hereof by writing: for which cause I do enjoin upon my aforesaid wife Martha, her heirs and assigns, to use all possible diligence to communicate unto my aforesaid brothers' and sisters' children the import of this my will, as soon as a declaration of peace shall be between Europe and America; provided also that all taxes that shall become due on the land shall be paid annually by my aforesaid wife Martha, her heirs and assigns, during the aforesaid term, or until the coming of the aforesaid heir; and if so be, no one of the aforesaid brothers' and sisters' children doth come within the abovementioned time to inherit the said land, then in such case I do give and devise the aforesaid land in manner and form following: that it shall be divided into three equal parts; the first I give to my grandson John Irwin Wilson; the second unto my stepson William Wilson; and the third part unto my stepson Joseph Wilson, with all the benefits thereof, to hold to them, their heirs and assigns for ever." Held, that this is an executory devise; and there being no disposition made of the freehold, it descends to the heirs at law until the condition be complied with.

A purchaser from a devisee, who, by the will, was bound to pay the taxes of a certain tract of land, can derive no title from a sale by the treasurer of the same land as unseated, for the non payment of the taxes.

ERROR to the common pleas of *Beaver* county.

This was an action of ejectment brought by the sons and heirs at law of William Wilson deceased, who was one of the devisees of Robert Irwin deceased, to recover from James Chambers the plaintiff in error, one hundred acres of land, being part of lot No. 1740, in the *first* district of donation lands. The following extract from the will of Robert Irwin contains all that is material to the case. After a bequest of personal property to his wife, the testator proceeds: "I

[Chambers v. Wilson.]

further give and devise to my wife Martha Irwin one hundred acres, with the allowance of land, being the east end of lot No. 1740, lying in the first donation district, bounded east by lot 81, &c. with all the benefits that may arise therefrom, to hold to her the said Martha Irwin, her heirs and assigns for ever. And further, I give and devise the remainder of the aforesaid lot 1740, being one hundred acres more or less (describing it), to any one of my brothers' or sisters' children that shall or may come from Ireland first, with all the benefits thereof, or that may arise therefrom, to hold to his or her heirs and assigns for ever, if so be they shall or do come within the term of six years after they shall get lawful word hereof by writing; for which cause I do enjoin upon my aforesaid wife Martha Irwin, her heirs and assigns, to use all possible diligence to communicate unto my aforesaid brothers' and sisters' children the import of this my will as soon as a declaration of peace shall be between Europe and America, provided also that all taxes that shall become due on the division last prescribed be paid annually by my aforesaid wife Martha, her heirs and assigns, during the aforesaid time, or until the coming of the aforesaid heir; and if so be no one of the aforesaid brothers' and sisters' children doth come within the above mentioned time to inherit the last mentioned part of said land, then in such case I do give and devise the aforesaid last mentioned part in manner and form following : that it shall be divided into three equal parts; the first I give unto my grandson John Irwin Wilson; the second unto my stepson William Wilson, and the third part unto my stepson Joseph Wilson, with all the benefits thereof, or that may arise therefrom, to hold unto the said John Irwin Wilson, William Wilson and Joseph Wilson, each, their heirs and assigns for ever." The testator further appoints his wife executrix, and her son James Wilson executor of his will. He also gives directions in the will for sending letters to his heirs, county Down, parish Gervoughy, near M'Kay's bridge, Ireland, David Irwin, David Cooper.

The will is dated 31st of August 1813, and was proved on the 11th of November 1813. It is a matter of history that peace was concluded in February 1815.

There was also in evidence a deed dated the 2d of July 1817 from Martha Irwin to Joseph Wilson for the whole tract, as well the one hundred acres devised to her by the will, as the remainder of the tract; all which she undertook to convey as executrix, with a general warranty, for the consideration of 1200 dollars.

A deed from Joseph Wilson and wife for the same tract to Joseph Wilson, dated the 5th of April 1819; and a deed from James Wilson to the defendant James Chambers, dated 19th of October 1819.

It also appeared in evidence that the one hundred acres, when in the possession of the defendant, were sold for taxes, and that the defendant became the purchaser, and obtained a treasurer's deed on the 30th of August 1826.

The plaintiffs offered James Wilson as a witness to prove that he

[Chambers v. Wilson.]

applied to Thomas Henry to write a letter directed to David Irwin and David Cooper, and that Henry did write a letter giving notice to the devisees in Ireland of their interest under the will of Robert Irwin deceased, of which letter no copy was kept, but the contents of which it was proposed to prove by the witness. To this admission of the testimony thus offered the defendant's counsel objected. The objection was overruled by the court, and the witness was admitted, who then testified that after Judge Henry had written the letter the witness put it into the postoffice and paid the postage to New York, in the fall of 1825. The witness did not recollect the words of the letter, but stated that the substance of it was about the piece of land being left to the heirs of Robert Irwin. It was the neglect of the widow that notice was not given till 1825. To this evidence the defendant's counsel excepted.

Judge Henry also testified that he wrote the letter in 1825. It was his impression that something, but he was unable to recollect exactly what, was said about a given period in which the devisees in Ireland were to come over. Whether the will was before him or not when he wrote, he did not remember.

The following were the only errors assigned that are embraced in the opinion of this court.

1. The court erred in receiving parol evidence of the contents of the letter said to have been written in the year 1825, and put into the postoffice, giving notice to the devisees, living in Ireland, of the devise in their favour in the will of Robert Irwin deceased, without the production of either the original or copy of said letter.

2. The court erred in their charge in stating that the construction put upon the will was, that the six years were to be calculated from the time of giving notice, and that if notice was given, although ten years after peace was declared, and none of the children of the brothers or sisters of the testator came within six years afterwards to claim and take the devise, then the devise over to the plaintiffs would take effect.

5. The court erred in stating to the jury that James Chambers, the defendant, having derived his title from Martha Irwin, was bound by the will to pay the taxes on the land in dispute, until notice was given agreeably to the will, and until some one of the brothers' and sisters' children came to accept and claim the devise within six years, and that having notice by his title of the provision, he was bound by it, and would derive no title by his purchase at treasurer's sale, and was not entitled to recover the value of the improvements made on the land.

*Shannon,* for plaintiff in error.

The testator enjoined it upon his executrix to give notice to the devisees in Ireland as soon as possible after the conclusion of the war. But no attempt to comply with this requisition in the will was made until 1825. There was no evidence of service of the notice

then pretended to be given. The postage of the letter was only paid to New York, where additional postage should have been paid to secure its transmission to Ireland. The loose declarations of the witness as to the contents of the letter should not have been admitted. Nothing short of the original or a copy should have been received. Altogether, the notice was insufficient. Patton's Administrators *v.* Craig's Administrators, 7 *Serg. & Rawle* 116; Eisenhart et al. *v.* Slaymaker, 14 *Serg. & Rawle* 156. The notice being insufficient, the condition precedent failed, on the performance of which only could the devise *over* to the heirs of Wilson take effect. As to the payment of taxes, this was devolved as a personal duty upon the widow and her heirs. They were bound to pay the taxes, which not being paid, the land was liable to be sold.

*Agnew,* for defendants in error.

The first exception was to the admission of Wilson's testimony, and not to its effect, which was a matter for the determination of the jury. On whom could the notice be served? The persons to whom the letter was directed were not parties to the suit. The circumstances were equivalent to proof of the loss of the letter, which justified the admission of evidence to prove its contents. The duty of paying taxes clearly devolved on the defendant below.

*H. M. Watts,* in reply.

First error. The title of the plaintiffs to the estate in controversy can be viewed in no other light than that of an executory devise, limited to take effect upon the failure of a condition precedent; the character of that condition to be determined by a judicial construction of the will of Robert Irwin—the performance of it, or a failure to perform, by the evidence on the record. The testator, reposing special confidence in his wife, enjoined it upon her to communicate *the import of his will* to the children of his brothers and sisters in Ireland; who, being the nearest his heart, were made the objects of his bounty. This was to be done *in writing,* with all *possible diligence,* after the *cessation* of *hostilities between* the *United States* and *Great Britain.* The testator died in 1813. Peace was concluded in February 1815. No effort was made by the widow to communicate the intelligence until 1825. Then a letter is proved to have been mailed at Beaver, written by Thomas Henry, Esq. But there is no evidence *of its containing* the *substance* of *the will*—of its having *reached* a *sea-port*—of its being *shipped*—or of *its receipt* by the person to whom it was addressed. Neither actual nor implied notice has been given. From the use of the phrases "possible diligence" and "get lawful word," it is apparent that the testator did not intend an interest should vest in any other than one of his nephews or nieces in Ireland, until it was proved that six years had elapsed since they *had received intelligence* of the offer he made them. Martha Irwin (the widow and executrix) had an interest in withholding the informa-

[Chambers v. Wilson.]

tion, the plaintiffs being her children by a former husband. Her conduct in relation to this estate was grossly fraudulent; for on the 23d of July 1817, she conveyed the two hundred acres, including the land in dispute, to Joseph Wilson, when she did not pretend to discharge the duty assigned her in the will of her husband for eight years afterwards. We think that the interests of the devisees in Ireland were not subjected by the testator to the injustice or caprice of the widow. If she had a right to defer the information for ten years, so had she for one hundred; in the meantime, the estate to be enjoyed by her children, while the person intended to be benefited might be mouldering in the grave.

The defendant below acquired title to the land in dispute under a treasurer's sale for non payment of taxes for the years 1821, 1822, 1823, 1824. The treasurer's deed was dated 30th of August 1826. After the lapse of two years, to wit on the 12th of September 1828, James Wilson paid the taxes, costs and per centage. It is argued that the defendant, deriving title from Martha Irwin after sundry intermediate conveyances, was bound to notice the injunction in the will of her husband upon her to pay the taxes, and having omitted to do so cannot be benefited by his own wrong. It is to be remarked that as Mrs Irwin had no interest in the estate, either at the time of conveyance, or in expectancy, the defendant took no title under her. It became not then his duty to discharge the taxes upon the estate. It devolved upon those having the title, as the act of 1815, relating to the redemption of lands sold for taxes, expressly provides. A stranger cannot interpose between the commonwealth and the owner of the land, and by payment of the taxes defeat the title of a purchaser at a fair sale. This is not contemplated by the act of assembly. The redemptioner must be one who had an interest in the land, and seeks to redeem that which was lost. In the present case, as the freehold was not "*in nubibus,*" and the right to redeem and consequent duty did not devolve upon James Chambers, the purchaser of the land at treasurer's sale, there was error in the instruction of the court on the point proposed.

The opinion of the Court was delivered by

ROGERS, J.—The intention of the testator, though inartificially expressed, cannot be mistaken. He intended that some one of his own blood should inherit the property; and as it is probable he was ignorant of the state of his family in Ireland, to effectuate this intention he devises the property in fee simple to the one of his brothers' or sisters' children who should first come from Ireland within six years after the notice of the devise. He enjoins the duty of giving this notice on his widow, who is his executrix and principal devisee; directs the notice to be in writing; prescribes the nature of it; and points out the persons to whom it shall be given. His design appears to have been, that those whom he intended to benefit should be fully informed of the nature and conditions of the devise, that they

[Chambers v. Wilson.]

might determine with a knowledge of all the facts whether they would avail themselves of his bounty, by complying with the conditions on which alone the estate vests. The legal effect of the will is that of an executory devise to the person who fell within the description in the will, and who first complied with the will of the testator by taking possession of the estate. The devise to the plaintiffs is only on failure of the condition annexed to the preceding estate, which is an executory or contingent limitation. If however the preceding limitation, or contingent estate, never should arise or take effect, the remainder over will nevertheless take effect, the first estate being considered only as a preceding limitation, and not a preceding condition to give effect to the subsequent limitation. *Fearne on Rem.* 390.

Thus in the case of a devise to trustees for eleven years, remainder to the sons of B successively in tail, provided that they should take the testator's surname, and if not and they should die without issue, remainder to the first son of C; and though the devise to the sons of B failed, yet the remainder to the son of C took effect, and the limitation to the sons of B was not held to be a condition precedent to its taking effect. It is also a rule that wherever there is an executory devise of real estate, and the freehold is not in the meantime disposed of, the freehold and inheritance descend to the testator's heirs at law. *Fearne* 511. As where a testator gave 550 pounds to his daughter, and devised his lands for a term of ninety-nine years in trust; that in case his wife should within five years pay off the 550 pounds, then he gave the lands to his wife for life, and after her death to his son H, and his heirs male and female, and for want of such issue to him and his heirs for ever, and the same term to wait on the same inheritance. The wife did not pay the money and the estate was sold under a decree upon a bill filed against H. Afterwards a bill was filed against the devisee of the purchaser by the son of H, as heir in tail for the reversion expectant on the term of ninety-nine years; there having been no fine levied to the purchaser by the son to bar the estate tail, and said person having notice of 'he title. Lord Hardwicke held, that this was a conditional limitation in the wife for life, taking place as an executory devise (for that it could not be a contingent remainder for want of a freehold to support it), and that H took an estate tail with remainder to her in fee. And though in this case the estate for life in the wife was a preceding executory limitation, which never took effect because she did not pay the money and perform the condition on which it was to arise, yet the estate tail to H was well limited, and took effect expectant on the term of ninety-nine years; and this being an executory devise, the freehold descended to H as heir at law to the testator till the four years elapsed, or the wife had performed the condition. These authorities show two things: first, that this is an executory devise; and second, that no disposition being made of the freehold, it descends to the heirs at law until the condition be complied with.

[Chambers v. Wilson.]

As the title descended to the heirs at law, the plaintiffs cannot recover unless they can show a performance of the condition, on which alone any title vests in them under the contingent limitation. The first limitation is a condition precedent, and makes the subsequent devise contingent upon the event of the performance of the directions of the will, and a right, on refusal of the intended devisees to avail themselves of the provisions of the will within the time prescribed after receiving the necessary notice. But until notice, such as is prescribed, be given, the six years do not begin to run. They are to have six years from that time to determine whether they will accept the devise in the only way it can be done, by a compliance with the terms imposed by the testator. Until this be done the title which descends to the heir cannot be divested. The condition precedent not being performed, no title can arise to the plaintiff. But the counsel of the plaintiffs allege that the conditions annexed to the devise have been substantially performed by a notice such as the will requires, and a failure on the part of the heirs to take possession of the estate. If this be so, the plaintiffs are entitled to recover. Judge Henry testifies, that he wrote a letter, which, I understand, was directed to persons named by the testator in 1825. It is his impression that there was something stated in the letter about a given period in which they were to come in (the brothers' or sisters' children), but he cannot recollect whether the will was before him when he wrote the letter. James Wilson says, that after Judge Henry had written the letter he put it in the postoffice and paid the postage to New York. That it was in the fall of 1825, of which he made a memorandum about a year after. He does not recollect the words of the letter, but says that the substance of it (to use his own language) was about the piece of land being left to the heirs of Robert Irwin. The witness further states that it was the neglect of the widow that notice was not given until 1825.

This testimony was objected to; but it was admitted by the court, who instructed the jury, that if they believed that the heirs had notice the plaintiffs were entitled to recover.

It is very plain that there has been great negligence, if not something worse, in the manner in which this business has been conducted. The reason may be easily imagined, when we recollect that on a failure to comply with the conditions imposed by the will, the property was limited over to the children and grandchildren of the widow by a former husband. The testator died in 1813. Peace was concluded in February 1815; but there is not even an attempt to give notice until 1825, a period of ten years. In the meantime she keeps possession until 1817, when she conveys the whole two hundred acres devised in the will to her son James Wilson. These facts require no comment. I take no exception to sending the letter by the post, as it is probable that it was not within the contemplation of the testator that his estate should incur the expense of a special messenger, and because that mode of conveyance may have been as

[Chambers v. Wilson.]

safe, and the letter as likely to reach its destination as if sent by a private hand. But, conceding all this, I cannot agree that the title of the heirs can be defeated by such testimony as this. It would be a sanction to a fraud, which I am inclined to believe has been attempted here. If a copy of the letter had been taken and preserved, we should then have known with certainty the nature of the information given, and we should then have been competent to judge whether the conditions prescribed by the will had been performed. But instead of this plain and obvious course, we have the uncertain recollection of two witnesses as a substitute; and what does their testimony amount to? Judge Henry wrote the letter, but he is not positive of what is alone material, viz. its contents. He is under the impression that there was something stated in it about a given period in which they were to come in. But this surely is not a compliance with the will of the testator, which, in express terms, directs that the import of the will shall be explained to them; as this would have been best done by an abstract from the will itself, with, perhaps, a description of the land, and an estimation of its probable value. But so far from this having been done, the witness will not undertake to swear that the will was even before him when he wrote the letter. Nor is this material defect supplied by James Wilson. He does not recollect the words of the letter, but thinks that its substance was about the piece of land being left to the heirs of Robert Irwin. What description was given of the land, if any; and how far the directions of the will were complied with, the jury are left to conjecture. We are therefore of the opinion that the proof of notice, as required by the testator, was altogether insufficient, and that the court should have so charged the jury. In this then there was error.

It is unnecessary to give any opinion on the other points made by the counsel for the plaintiffs in error, except to state that we agree with the court of common pleas that Mrs Irwin, from whom the defendant claims title, was bound to pay the taxes: that the defendant, as her assignee, had notice of this, and was also bound to pay the taxes. It would be a fraud to permit her to gain a title by the non performance of a duty which the law throws upon her.

Judgment reversed.