NEW-YORK,
May, 1829.

JACKSON, ex dem. McCREA, *vs.* MANCIUS and VAN-
DERHEYDEN.

Jackson
v.
Mancius.

THIS was an action of ejectment, commenced in May term, 1827, tried at the Albany circuit, in February, 1828, before the Hon. WILLIAM A. DUER, one of the circuit judges.

The lessor of the plaintiff deduced title to the premises in question, by proving his descent from Johannes Beekman, who occupied the premises in his life time, and died in possession of the same in the year 1756. He left two sons and two daughters. The sons died at an early age, previous to 1760. The eldest daughter, named Caty, married a British officer of the name of Bain; and the youngest, Eve, sometime before the revolutionary war, married John McCrea, the father of the lessor of the plaintiff. The daughters, previous to their marriage, continued in the possession and occupation of the premises. Shortly before the revolutionary war, Bain was ordered to join his regiment in the West Indies. His wife accompanied him, and died there without issue. John McCrea and his wife, in 1772 or 1773, resided in and occupied the house on the premises, and so continued to do for a number of years. After the commencement of the revolutionary war, they removed into the country and let the premises, and received rent for the same. Eve, the wife of John McCrea, died about the year 1780, leaving the les-

A deed by a tenant by the curtesy, altho' purporting to convey a fee, passes only a life estate, when it is affirmatively shewn that the grantor had only an estate for life, and when the form of conveyance used by him carries only such estate as he had. The fact of a tenant by the curtesy assuming to convey a fee, supported by proof of the destruction of the house of the grantee many years before the trial by fire, is not sufficient to warrant the presumption of a conveyance to the tenant authorizing the grant of a fee, especially when rebutted by other circumstances.

Where a tenant by the curtesy conveys a greater estate than he has in premises, a feoffment with livery of seisin which would work a forfeiture of his estate will not be presumed, it being equally probable that the more common species of assurance of lease and release or bargain and sale was adopted, which, though in terms purporting to convey a fee, in reality transfer no more or a greater estate than the grantor had.

Since the statute allowing the wife and her heirs to enter into lands belonging to her, aliened by the husband, after the decease of the husband, it seems that a feoffment by the husband of the wife's estate does not work a forfeiture of his life estate.

If a forfeiture of a life estate accrues by the disseisin of the tenant for life, the reversioner is not bound to enter until the natural termination of the life estate.

Where a grantee, under a conveyance from a tenant by the curtesy of a house and lot, goes into possession of the lot and of an alley adjoining the same, which had been used for thirty years by the owners of the lot as appurtenant thereto, continues in possession himself nine years, and then acquires title to the alley from a third person, he cannot set up such title as *adverse* in an action of ejectment brought by the heir to recover the premises as the inheritance of his mother, the action being brought within twenty years after the termination of the life estate.

sor of the plaintiff, her only son and heir at law. John Mc-Crea died in 1811. The premises in question are a lot, with a house and an office built thereon, in Pearl-street, in the city of Albany. The office was lately erected on a passage or alley leading into the lot adjoining the house on the south side, bounded on the south by a brick wall on the adjoining lot, formerly owned by a Mr. Livingston, now by Mr. Webster. This passage or alley had two gates, a large and a small one. It was used exclusively by the family of Johannis Beekman. The office is built upon it. The plaintiff rested.

The defendants read in evidence the record of a deed, bearing date the 2d May, 1778, from John McCrea to Jacob Vanderheyden, the father of the defendants, whereby, in consideration of £1158, lawful money of New-York, the grantor conveyed in fee a certain messuage or dwelling house and lot of ground situate in Pearl-street, in the city of Albany, bounded on the north by the lots now or lately in the possession of Samuel Pruyn and others, naming them, *on the south by the ground or passage* of the heirs of Myndert Roseboom, deceased, on the east by the street, and on the west, &c. being in length east and west six rods, and in breadth along the street fifty-six feet, and all houses, out-houses, ways, paths, easements, &c. to the premises belonging, &c. The deed contained the usual covenants of title, power to sell, for quiet enjoyment, further assurance, and against incumbrances. The subscribing witnesses were Samuel Stringer and Stephen Lush ; the former of whom died in 1817, the latter in 1825. The grantee, immediately after the date of the deed, went into possession of the premises, and remained so during his life time. The defendants succeeded him.

The defendants also produced in evidence a deed from Thomas Shipboy to Jacob Vanderheyden, bearing date the 19th October, 1787, conveying a lot of land on the west of the premises in question ; and *also an alley* lying south of the house conveyed by McCrea to Vanderheyden, extending from the street to the principal lot conveyed by Shipboy, being in length six rods, and in breadth seven feet; *Ryland*

measure, (equal to seven feet two inches and $\frac{7}{10}$ *English* measure.) Measuring from Pruyn's lot south, the lot conveyed by McCrea lapped on the office nine and a half inches.

A witness (Mr. Charles R. Webster) testified that he owned a lot bounded on the north by the Shipboy lot; that S. Visscher, whose wife is the heiress of Shipboy, told him that he had a right to the use of the alley in common with Vanderheyden, but the witness said, as it was not in his deed, he never claimed it. In 1792 this witness purchased the Livingston lot, lying south of the lot conveyed by McCrea, but never used or claimed the alley, Vanderheyden continuing to occupy it as he had done before.

The sale from McCrea to Vanderheyden was generally known, and the prevailing opinion was, that Vanderheyden had paid a good price for the house and lot. Real estate at that time was very low in the city of Albany. In 1797, during a great fire in the city of Albany, a house in which Vanderheyden then resided was consumed ; and a witness testified that shortly afterwards Vanderheyden applied to him for new deeds of property, which the witness had previously conveyed to him, alleging that the deeds executed by him were burnt in the house.

For the defendants it was contended, 1. That the plaintiff had not shewn title to the premises, and 2. If *prima facie* title was shewn, the evidence was sufficient to justify the presumption of a conveyance from the mother of the lessor. A verdict, however, was taken for the plaintiff, subject to the opinion of this court.

*L. H. Palmer,* for plaintiff. The occupation of the premises as owner by Johannis Beekman, his dying in possession, and the succession of his descendants, gave title to the lessor of the plaintiff against the defendant and all the world. (2 *Saund.* 112. 5 *Cowen,* 299, *S. C.* 553. 10 *Johns. R.* 338.) The possession of the father of the lessor was as tenant by the curtesy, and his possession was the possession of the heir. A tenancy by the curtesy is an excrescence out of the inheritance, and a continuation of it for a certain time in the husband, which would otherwise have ceased. (2 *Atk.* 47.)

Vanderheyden, by the conveyance from John McCrea, acquired the *life estate* of the grantor as tenant by the curtesy, and no more, which expired in 1811 ; and during the continuance of the particular estate, being in possession under the tenant for life, he could not set up an adverse title or possession. The alley or gang-way, though not embraced in the boundaries of the lot conveyed by McCrea to Vanderheyden, passed by the deed as an appurtenant to the lot. It was used *exclusively* by the ancestors of the lessor. (*Cro. Eliz.* 16, 704, 113. 2 *Rolle's R.* 347. *Plowd.* 170. 4 *Johns. R.* 47. *Adams on Eject.* 17. 9 *Johns. R.* 298.) The deed from Shipboy is unavailing, as it is not shewn that the grantor had title to the premises, or ever was in possession. Besides, Vanderheyden having acquired title under the tenant of the particular estate, could not change the character of his possession, nor will any presumption be indulged contrary to the title under which he entered. (2 *Burr.* 1075. 9 *Johns. R.* 270. 5 *Conn. R.* 310. 7 *Wheaton,* 59, 110, 114. 8 *Viner's Abr.* 169, *pl.* 13. 3 *Johns. R.* 297. *Gilb. Law of Ev.* 83. 3 *Dallas,* 486.)

*A. Van Vechten,* for defendants. The deed from McCrea to Vanderheyden, in 1778, is with full covenants, conveying an absolute estate, the grantor claiming to have power to sell. There is, therefore, an absolute conveyance, a possession under it, and a descent cast. The sale by McCrea being public and notorious, a fair and full price having been paid for the lot, the deed with full covenants, the grantor claiming to have power to sell, having probably been drawn by an eminent counsel, whose name appears as one of the witnesses to its execution, afford reasonable ground for the presumption that the interest of Mrs. McCrea had been conveyed to trustees, for the purpose of vesting the title in her husband, so as to enable him to transmit the same to a purchaser. Where a lessee in fee abandoned the demised premises, after fourteen years possession under conveyances from a lessor, who had a right to enter, in default of payment of rent, a regular re-entry at common law was presumed. (2 *Caines,* 382.) The principle of this doctrine is the quieting of titles and the protection of fair and bona fide purchasers against

stale and dormant claims. ( 6 *Wheaton*, 504. 7 *id*. 109. 12 *Vesey*, 265.) The non-production of the title papers is accounted for by the destruction of Vanderheyden's house and papers by fire in 1797. The acquiescence of the lessor since the death of his father, in 1811, until the commencement of this suit, in 1827, furnishes additional ground for the presumption of a conveyance from Mrs. McCrea. The deed to Vanderheyden was on record, and by an inspection of it, the lessor must have seen it was a conveyance of an absolute estate, and not merely a transfer of the life estate of his father.

The lessor of the plaintiff has lost his right of action by lapse of time ; he might have asserted his claim previous to the death of his father. Allowing John McCrea to have been a tenant for life, he forfeited his estate by granting a larger estate than his own, by which act, he determined and put an end to his own interest. (2 *Bl. Com.* 275. *Co. Litt. lib.* 2, *ch.* 7, *sec.* 415. 3 *Leon.* 169. *Moore*, 212.) This is the rule applicable to alienations by *particular tenants*, and there is no reason why it should not affect a tenant by the curtesy. The statute to prevent and avoid alienations by tenants for life and recoveries by collusion, (1 *R. L.* 182,) supports the position that a conveyanee in fee by the father of the lessor was a forfeiture of his estate ; for it not only avoids the conveyance, but gives a right of entry to the heir on the death of his mother.

The entry of Vanderheyden was in hostility to the right of the lessor. He entered under a conveyance of the absolute title, not of the life estate ; he paid a full and fair price for the premises. He claimed to be the owner. The title he acquired ought not to be considered subordinate to the title of the lessor of the plaintiff. (5 *Cowen*, 583. 18 *Johns. R.* 355.) Forty nine years elapsed after the accruing of his title before the commencement of this suit. The statute of limitations, therefore, attaches.

The alley or gang-way has been held adversely since 1787, the time of the conveyance from Shipboy to Vanderheyden. It is not included in the deed from McCrea ; on the contrary, it is expressly excluded from it, the lot being bounded on

the south by the ground or passage of the heirs of Myndert Roseboom, &c.

*Palmer*, in reply. The lessor of the plaintiff could not claim the premises during the existence of the particular estate. The statute, (1 *R. L.* 182,) gives no new right, but only avoids the discontinuance of the estate by the tenant by the curtesy, so that the wife or the heirs "may respectively enter into and enjoy the same according to their rights or titles therein, as if no such act had been done or suffered."

The deed from McCrea, having its effect by the statute of uses, passed no greater estate than he had a right to convey. It could not operate as a disseisin or discontinuance of the principal estate ; and the statute itself provides that the heir shall not be barred by deed with covenants. But had it been a common law conveyance, feoffment with livery of seisin, the statute saves the rights of the heir, prevents a discontinuance, and gives him a right of action after the death of his father and mother. (1 *R. L.* 183, *s.* 7.) There is no fact or circumstance in the case on which to found the presumption of a conveyance from the mother of the lessor. No act or acquiescence is shewn on her part. (2 *Burr.* 1075.) The *record* of the deed from her husband rebuts the presumption of a conveyance from her ; for had it existed, it most probably would also have been recorded. The production of the deed from Shipboy destroys the presumption that all Vanderheyden's title papers were destroyed when his house was consumed by fire ; and on the contrary, every legal presumption is against a conveyance by the mother. She did not join in the conveyance with her husband ; she was under a legal disability, and could not convey, but according to the forms of law, which were not shewn to have been complied with ; and there is no reason to presume a conveyance to trustees ; for if the object was to transfer the fee, why was not the conveyance made directly to Vanderheyden ?

*By the Court,* SAVAGE, C. J. The occupation of the premises by Johannes Beekman before and until his death, and by his family for seventeen years before the marriage of Eve with John McCrea, are, prima facie, sufficient to shew

that the title, or, at any rate, the right of possession, was in the Beekmans. Whatever interest Johannes Beekman had in the premises became vested in Eve, his daughter, as the last survivor. The marriage of John McCrea with Eve, and the birth of a child, gave him an interest in the premises as tenant by the curtesy initiate. The lessor of the plaintiff shews no paper title, but facts from which we may fairly infer that his mother was the owner, and that his father had an estate for life. The father being dead, and the mother also, the heir of the mother is entitled to recover, unless he is barred by the deed of his father, or by lapse of time.

1. What title passed by the deed of John McCrea? It is a general rule, that no one can convey a better title than he has; and as it appears that he had an estate for his own life, the fair presumption would be that he intended to convey the estate which he had in the premises. But the deed purports to convey an estate in fee; and hence it is argued that we ought to presume that he was authorized by a conveyance from himself and wife to trustees, and by the trustees to him, to convey in the manner which he did; and the non-production of those conveyances is supposed to be accounted for on the ground that they must have been burned in the house of the grantee in 1797. "Presumptions" of grants "are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in the party in possession. They may, therefore, be encountered and rebutted by contrary presumptions, and can never fairly arise where all the circumstances are perfectly consistent with the non-existence of a grant." (7 *Wheaton*, 109.)

If we apply this doctrine of presumptions to the present case, we must presume a conveyance to John McCrea, if the facts are such as could not occur without such conveyance. Could not, then, a tenant by the curtesy convey in fee with-

out having an estate in fee ?   The parliament of Great Britain supposed that such an act might be done, and guarded against it by *statute* 32 *Henry* 8, *ch.* 28, which provision was re-enacted in this state at an early day, (1 *R. L.* 181, 2, 3 ;) by which it is enacted, that no fine, feoffment or other act of the husband in relation to the freehold or inheritance of his wife, shall prejudice such wife or her heirs.   But even if such a presumption were to be allowed, there are facts to rebut it.   Although the house of Vanderheyden was burnt, the deed from Shipboy was not burnt.   If there were conveyances to divest the title of the wife, is it not reasonable to suppose that they would be found with the deed from McCrea, as they must be links of the same chain of title ?   The natural presumption would be, that they would have been recorded with McCrea's deed.   Presumption in courts of law is founded upon the nature and character of man, and his disposition to enjoy and preserve what is his own.

I conclude, therefore, that there is nothing in the fact of McCrea's conveying a fee, to shew that he had the capacity to convey such an estate when it is shewn that he had only an estate for life, and when, also, the form of conveyance used by him carried only such estate as the grantor had.   If a greater estate is claimed under him, it should not be left to presumption so ill sustained, to prove that he had capacity to grant such estate.

2.  Is the lessor barred by lapse of time ?   It is contended that the lessor's right of entry (if any) accrued in 1780, at the death of his mother, and as more than 20 years elapsed before suit brought, that therefore this action cannot be maintained.   It is said that John McCrea, having only an estate for life, by attempting to convey a greater estate than he had, forfeited his estate, and that the heir of the wife might have entered upon her death.   In this point there are two subjects of inquiry presented :  1. Did the tenant by the curtesy forfeit his estate by attempting to convey a fee ? and 2. If he did, when did the heir's right of entry accrue ? was it on the death of his mother or his father ?  1. Estates for life are considered at common law as strict feuds, and are forfeitable for certain causes.   If tenant for life, including tenant by the

curtesy, takes upon him to convey a greater estate than he has, in such a manner as to divest the estate in reversion or remainder, such conveyance will operate as a forfeiture of his estate for life, and the reason given (a very singular one in this country,) is because it is a renunciation of the feudal connection between him and his lord. (1 *Cruise*, 122, § 36, and 173, § 31. *Co. Litt.* 252, *a.* *Com. Dig. Forf. a.* 1.) The form of conveyance for this purpose must be such as to divest the estate of the reversioner or remainderman, and these were three : feoffment with livery of seisin, fine, and common recovery ; but a conveyance by lease and release, or bargain and sale, is no forfeiture.

If the conveyance in this case was by feoffment, the injury is one which is termed a *discontinuance*, the entry of the feoffee being lawful during the continuance of the particular estate, but by his continuance in possession after the death of the feoffor, the legal estate of the heir was gone or at least suspended, and for a while discontinued. When the right of entry is thus lost, and the party can only recover by action, the possession is said to be discontinued. By the common law, the alienation of a husband who was seized in right of his wife, worked a discontinuance of the wife's estate, till the statute 32 *Hen.* 8, *ch.* 28, provided that no act by the husband alone should work a discontinuance of, or prejudice the inheritance or freehold of the wife. (*Jacob's Law D. tit. Discontinuance.*)

In order to prove a forfeiture, therefore, in the conveyance by McCrea, it should have been shewn to have been a feoffment with livery of seisin. As this mode of conveyance is nearly obsolete in England and very little used, and the more common species of assurance being lease and release and bargain and sale, we will not presume that a feoffment with livery was executed in this instance. It is equally probable that one of the other modes of conveyance was adopted, which, though in terms purporting to convey a fee, yet in reality transfer no more or greater estate than the grantor had. The fact, then, of a forfeiture is not satisfactorily shewn. But suppose the conveyance to have been a feoffment, 2. Did a right of entry accrue ? and was the heir bound to enter ? Lit-

tleton says, (*sect.* 594,) " If a man be seized of land as in right of his wife, and thereof enfeoff another and dieth, the wife may not enter, but is put to her action, the which is called *cui in vita.*" But this is altered, says Coke, since our author wrote, by the statute 32 *Hen.* 8, by the provision of which statute, the wife and her heirs, after the decease of her husband, may enter into the lands or tenements of the wife, notwithstanding the alienation of her husband.

From what has already been said, and from the cases referred to, it would seem that the criterion of the forfeiture is the actually divesting of the estate of the remainderman or reversioner—the passing an estate which the grantor has no right to pass ; and as the statute has interposed in this case to prevent such an effect from the feoffment of the husband, I think it follows that a feoffment in such case by the husband of his wife's estate does not work a forfeiture. It is, perhaps, not material to consider that question ; but the more important inquiry will be, whether the heir is bound to enter during the life of the tenant for life, supposing he has a right so to do. The statute has been understood as refusing the right of entry till the husband's death : " and the heirs of the wife shall not be barred of their action after the death of their *father* and mother by the deed of their father, if they demand by action the inheritance of their mother which their father did alien in the life time of their mother." ( 1 *R. L.* 183, § 7.) Lord Coke seems to understand the statute, that no right of entry exists till the death of the husband. He is so understood by *Jacobs*, in his dictionary, who says, " Though if the husband hath issue, and maketh a feoffment in fee of his wife's land, and his wife dieth, the heir of the wife shall not enter during the husband's life, neither by the common law, nor by the statute," citing 1 *Inst.* 326.

In the case of *The Earl of Pomfret* v. *Lord Windsor*, (2 *Ves. sen.*, 482,) Lord Hardwicke expresses an opinion that in case of a fine by tenant for life, which, as soon as levied, operates a forfeiture, the remainderman or reversioner may enter presently, but is not bound so to do ; and therefore the law gives him five years after the death of the tenant for life, because he has no reason to look until the natural determin-

ation of the estate.   So Lord Ellenborough, in *Doe, ex dem.*
*Cook,* v. *Danvers,* (7 *East,* 321,) says, that " If a forfeiture
were committed, the party entitled to enter for it, was not
bound to do so."

In the state of Massachusetts, this question has been twice
decided, (9 *Mass. Rep.* 508, and 15 *Mass. Rep.* 472;) the
last of which cases was *Wallingford* v. *Hearl,* in which it ap-
peared that the defendant's grand-father died seized in 1770,
and the premises in question were assigned to the widow for
her dower.   She died in 1810, and the demandant entered
in 1811.   The tenant proved that he and those under whom
he held had been in peaceable possession, claiming the prem-
ises which were under improvement, for 30 years and up-
wards.   It was contended for the tenant, that as the right of
entry was barred by 20 years possession, and as the rever-
sioner may enter on the disseisor during the continuance of
the particular estate, and more than that time having elaps-
ed, the action could not be maintained.   But Parker, Ch. J.,
in delivering the opinion of the court, says, " The demand-
ant's right of entry accrued on the death of the tenant for
life ; that if he might have entered in consequence of the dis-
seisin of the tenant for life, he was not bound to do so.   He
might well suppose that the tenant had entered under a con-
tract with her who was seised of the freehold.

So in this case, the lessor might well suppose that Vander-
heyden had purchased only the life estate of John McCrea,
and he was not bound to look after it till the natural termi-
nation of the life estate.   I am of opinion, therefore, 1. That
the lessor has shewn a sufficient title to enable him to recov-
er ; 2. That there is no ground to presume a title in fee in
John McCrea, but only a life estate as tenant by the curtesy ;
3. That no forfeiture is shewn of his life estate, because,
1. It does not appear that he conveyed by feoffment with
livery of seisin ; and 2. If it did so appear, the statute pro-
hibits the discontinuance which such a conveyance would
produce at common law ; and therefore, as the estate of the
reversioner is not affected, there is no forfeiture.   I am aware
that the cause of forfeiture is said to be the disloyalty of the

tenant for life to his lord; but I consider the true criterion of forfeiture, the passing the estate which he ought not to pass. 4. That if a forfeiture was shewn, yet the reversioner is not bound to enter until the natural termination of the life estate, as the law does not require him to look after the estate, the presumption being that the tenant in possession holds by such a conveyance as the tenant for life had a right to give. I am therefore of opinion that the plaintiff is entitled to judgment in the two first causes.

The third suit* against Dey is for the alley. This alley was always occupied as part of the Beekman lot. The only evidence of any other claim to it is the information of Visscher to Mr. Webster that he had a right to the use of the alley in common with Vanderheyden; but Mr. W. says, as it was not in his deed, he never claimed it. Although the deed from McCrea covers but a small part of the alley, yet it undoubtedly passed as appurtenant to the lot. Vanderheyden took possession of it under his purchase, and occupied it ten years before he took the deed from Shipboy. That deed was not necessary to his title, as there had been an exclusive possession under claim of title for thirty years and upwards. If Shipboy ever had any claim, it seems from what was said by Visscher, to have been only a claim to the use of it in common with Vanderheyden, whose title was not disputed.

Can such a possession, under such a deed, be considered adverse? It is true, that a possession taken at first under the true owner may subsequently become adverse; but there must be some disclaimer of the owner's title, and some notorious act or claim under the new title sufficient to give character to it. (5 *Cowen*, 484.) It does not appear that Vanderheyden ever disclaimed the title of McCrea to this alley, or ever claimed to hold it under Shipboy, adversely to the McCrea title. But suppose it to be so, does that affect the plaintiff's rights? The present lessor claims it as the inheritance of his mother, and has shewn *prima facie* at least that he is entitled to it as her heir. For the reasons already as-

---

\* There were three suits brought against the tenants of the present defendants, who were admitted to defend as landladies.

signed, he could not assert his title, or was not obliged to do so till the natural termination of the life estate of the tenant by the curtesy. That the reversioner cannot assert his claim during the continuance of the particular estate, needs no authority to support it. That the statute does not run against the heir during the continuance of the tenancy by the curtesy, was decided in the case of *Jackson, ex dem. Swartwout,* v. *Johnson,* (5 *Cowen,* 74.)

It was impossible for the lessor therefore to prosecute within 20 years after the date of Shipboy's deed, except upon the ground of forfeiture; and that I think I have shewn he could not do, at all events was not bound to do. The result then is, that the Shipboy deed can have no possible effect in this case; and if so, this third cause depends upon the same principles as the other two, and the plaintiff is entitled to judgment.

Judgment for the plaintiff.