Fisher
*v.*
Shattuck.

## BENJAMIN MELVIN *versus* The Proprietors of the LOCKS and CANALS on Merrimack River.

In 1771 a testator devised a parcel of land to his two daughters equally as tenants in common, and they with his widow remained in possession till 1773, when one daughter married K, and after that the widow and the other daughter remained in possession till 1777, when this daughter married M ; whereupon M went into possession, and had issue in 1777, and in 1782 he conveyed the whole land to C, in fee, with covenants of seisin and warranty, his wife signing the deed, but there being no allusion in it to any right or title in her, and no words of grant or release on her part. The wife died in 1826, and the husband in 1830, and in 1832 their son, the demandant, made an entry as heir to his mother. The tenants derived their title from C, and in order to raise the presumption of a lost deed of the fee to M, prior or subsequent to his conveyance to C, they offered evidence that C mortgaged the land in fee with warranty in 1785, that he sold a small parcel of it in 1792, and that that parcel had been purchased by the demandant's brother in 1807 and by the demandant himself in 1821, that C erected valuable buildings on the residue and was in possession and resided upon it thirty years next before his death, that in 1814 it was sold under a license of court by the guardian of his children, and had ever since been in the possession of those claiming under C, that K and his wife had acquiesced in the possession of C and those claiming under him for almost fifty years, and that the demandant, and until their death, his father and mother, had lived in the neighbourhood of the land, and no claim to the land had been made by either of them until 1832. It was *held*, that this evidence was admissible, and that it was sufficient to sustain a verdict for the tenants founded on the presumption of a lost deed of the fee to the demandant's father.

WRIT of entry for an undivided fourteenth part of a tract of land in Lowell, containing about eighteen acres. The writ was dated July 18, 1832. The demandant counted on his own seisin within thirty years. The cause was tried upon the general issue, before *Morton* J.

The demandant produced an office copy of a deed of the whole tract, from Benjamin Parker to Thomas Fletcher, dated March 5, 1742, acknowledged February 27, 1745, and recorded November 24, 1770. He then proved that Fletcher improved a meadow, parcel of the tract, and there was no evidence of any other improvements by him. The demandant also proved that Fletcher died seised of the premises, on Au-

gust 6, 1771, leaving a widow, and two daughters, Rebecca and Joanna. He also produced an office copy of the will of Thomas Fletcher, dated May 6, 1771, and proved September 4, 1771, wherein he devised all his real estate to his two daughters equally, as tenants in common. After the death of Thomas Fletcher, the widow and daughters remained in possession of the premises till the marriage of Rebecca with Dr. Benjamin Kittredge in 1773, and after that time the widow and Joanna remained in possession till the marriage of Joanna with Benjamin Melvin, the father of the demandant, on February, 29, 1777, when Melvin went into possession. Soon after, and while in possession, Melvin had issue by Joanna, James Melvin, born August 29, 1777. He continued in possession up to the time of his conveyance to Joseph Chambers.

Rebecca Fletcher was born December 6, 1753. Joanna was born November 4, 1756, and died in September 1826, leaving seven children by Melvin senior, of whom the demandant, born in 1786, is one. Melvin senior died in April 1830. The demandant made an entry on the demanded premises on May 5, 1832, claiming as heir to his mother The demandant here rested his case.

The tenants then gave in evidence a deed from Melvin senior to Joseph Chambers, dated May 31, 1782, acknowledged June 25, 1782, and recorded February 15, 1790, purporting to convey the demanded premises to Chambers in fee simple, with the usual covenants of warranty. It was signed by Melvin senior and Joanna his wife, but the name of Joanna nowhere occurs in the deed, except by her signature, and no allusion is made to her or her right in the land, nor are there any words of grant or conveyance on her part, of any title or right in the land, but the deed, by its terms, is the deed of the husband only. Annexed to the deed is an acknowledgment thereof by Joanna with her husband

The tenant then gave in evidence a license from this Court, dated April, 1814, to Moses Hale, guardian of the children of Chambers, who was then deceased, to sell his real estate, also an office copy of a deed of the premises from Hale, as guardian, to Artemas Holden, dated May 9, 1814, and acknowledged and recorded May 12, 1814 ; a copy of a deed from

Holden to Thomas Hurd, dated January 22, 1822 ; a copy of a quitclaim deed from Hurd to the Merrimack Manufacturing Company, dated August 28, 1822 ; and a copy of a deed from the Merrimack Manufacturing Company to the tenants.

The tenants proved that Chambers was in possession of and resided on the premises for thirty years next before his death ; that in 1785 he mortgaged the same to Benjamin Parker in fee simple, with covenants of seisin and warranty, to secure the payment of 46 pounds, 3 shillings.

The tenants then gave in evidence a copy of a deed from Chambers to Phinehas Whiting, dated April 4, 1792, conveying about one fourth of an acre of the land described in the deed from Melvin to Chambers, which parcel is not included in the demanded premises ; also a copy of a deed of this small parcel, from Whiting to Asa Emerson, dated March 1, 1800 ; also a mortgage deed of the same from Emerson to Aaron Fletcher, dated November 5, 1800, to secure the payment of $115·75 ; also a deed of the same from Emerson to John Wilson junior, dated August 5, 1803 ; also a copy of a deed of the same from Wilson to James Melvin, the brother of the demandant, dated February 17, 1807 ; also a copy of a deed of the same from James Melvin to the demandant, dated December 1, 1821.

The tenants then proved that Chambers, soon after the deed from Melvin to him was executed, built a small house on the demanded premises, in which he lived some years, and afterwards built a larger one now standing, valued at 1200 or 1500 dollars, enclosed the land with fences, and brought it under cultivation, and that since the death of Chambers the premises have been constantly in the possession of those claiming under Chambers.

The tenants gave in evidence, that the premises were advertised to be sold by public auction and that the advertisements were posted up in the immediate neighbourhood of the land , that Benjamin Melvin senior, Joanna, and the demandant himself, all resided in the immediate neighbourhood of the land from the time Chambers took possession until his death, and at the time of the sale by auction, and ever afterwards until the death of Benjamin Melvin senior and Joanna, and that

22 *

no claim was ever known to be made or title set up, or notice of claim or title given, by Benjamin Melvin senior or Joanna, nor by the demandant, until the entry on May 5, 1832.

This evidence was objected to by the demandant, but was admitted.

Upon these facts the tenants contended, that the jury had a right to presume that Benjamin Melvin senior had acquired a title in fee to the premises prior to the date of his deed to Chambers, or subsequently thereto, which passed by that deed or some subsequent deed to Chambers.

The demandant contended, that the facts in the case did not warrant the jury in making any such presumption, but that the deed to Chambers conveyed only the life estate of Benjamin Melvin senior, which gave Chambers and those claiming under him a good right to the possession of the premises during the life of Benjamin Melvin senior, so that neither he nor Joanna, nor any other person claiming under them or either of them, had any right or could make any claim to the possession of the premises during the continuance of such life estate, and that there was nothing that would warrant the jury in presuming or finding that Benjamin Melvin senior had conveyed to Chambers any other estate or title than his (Melvin's) life estate in the premises.

But the judge ruled that the foregoing evidence was competent, and left it to the jury, upon the facts as above stated, to determine whether Benjamin Melvin senior, either before the date of his deed to Chambers or afterwards, had acquired an estate in fee in the premises, which passed to Chambers by that deed or some subsequent deed.

The jury found for the tenants, and thereupon the demandant moved that the verdict be set aside, and a new trial granted, for reasons which appear in the foregoing statement.

*Oct. 17th.*    *Fletcher* and *Mann*, for the demandant, said that Melvin the elder was tenant by the curtesy initiate ; that his deed conveyed an estate for his life, and until his death the possession of Chambers and those claiming under him was rightful, and the acquiescence of the demandant and his ancestors afforded no presumption of any other title than that which was shown by the deeds ; that the signing of the deed by Melvin's wife.

though in reality it did not convey her title, might well lead to the belief that she had parted with her right, and this explained the circumstance, that the land had been subsequently occupied and conveyed in the same manner as if the fee had vested in Chambers ; that the wife was a minor at the time of her marriage, and therefore could not have previously conveyed to Melvin ; that if the conveyance be supposed to have been made after her marriage, the jury must presume two deeds, one from the husband and wife to a stranger and another from the stranger back to the husband ; that if the facts proved may be accounted for without supposing the existence of another fact, such fact is not to be presumed ; that it is absurd for the jury to presume, as a matter of fact, that a grant has been made, when they do not believe it ; and that in no case can they find a fact which they do not believe, except where the presumption resolves itself into a rule of law. 6 Law Mag. (London, 1831,) 343 ; 5 Amer. Jurist, 229 ; Glassford on Evid. 563 to 592 ; *Tyler* v. *Wilkinson*, 4 Mason, 402 ; *Ricard* v. *Williams*, 7 Wheat. 110 ; *Doe* v. *Reed*, 5 Barn. & Ald. 232 ; *Howes* v. *Barker*, 3 Johns. R. 499 ; *Jackson* v. *Miller*, 6 Cowen, 751 ; *Jackson* v. *Schoonmaker*, 4 Johns. R. 402 ; *Stevens* v. *Winship*, 1 Pick. 318 ; *Wallingford* v. *Hearl*, 15 Mass. R. 472 ; *Ingraham* v. *Hutchinson*, 2 Connect. R. 584 ; *Jackson* v. *Van Schaick*, 5 Cowen, 123 ; *Doe* v. *Cooke*, 6 Bingh. 174 ; *Jackson* v. *Mancius*, 2 Wendell, 357 ; *Stoever* v. *Whitman*, 6 Binney, 416 ; *Tilson* v. *Thompson*, 10 Pick. 359.

*J. Mason*, *Hoar* and *Robinson*, for the tenants, cited *Clark* v. *Faunce*, 4 Pick. 245 ; *Niven* v. *Belknap*, 2 Johns. R. 589.

SHAW C. J delivered the opinion of the Court. We consider the present case in this stage of it, as presenting two questions ; 1. Whether the evidence admitted was proper and competent to be laid before the jury, from which they might infer the execution of some deed or that some other conveyance was made to Benjamin Melvin prior to his deed to Chambers, by which he acquired a title or right to convey the same to Chambers in fee ; and if so, 2. Whether there was sufficient evidence to warrant the jury in finding such conveyance.

*Melvin
v.
Locks and
Canals.*

*April term
1836.*

There is one fact stated in the report, which, from the explanations made at the hearing, and also from other parts of the report, we take to be rather an inference of law from the evidence, than as a substantive fact, and which should be taken with some qualification. It is stated in the report, that Parker conveyed to Fletcher in 1742, that Fletcher improved part of the premises and died seised in 1771. It is this last statement, " that he died *seised*," to which I allude. I do not understand that there was any proof of seisin, other than that above stated. As a presumption from those facts, it is undoubtedly correct, because, it being shown that it was conveyed by Parker to Fletcher in 1742, that Fletcher entered and improved part of the premises, and no alienation or conveyance by Fletcher being shown, the presumption which the law raises from these facts, is, that he remained seised to the time of his death. The difference in its application to the present subject is this ; if it was a fact conceded, that Fletcher was *seised at the time* of his decease, it could be controlled by no evidence ; whereas standing upon the footing of a presumption of fact, other evidence, either positive, as by deed or record, or circumstantial, as by circumstances, showing some non-appearing grant, it is open to question. It is a presumption which may be rebutted by competent evidence to counteract it, and not a conclusive fact.

The plaintiff demands one fourteenth ; that is, as one of seven children of his mother, he claims a seventh part of one moiety. The ground of this claim is, that Fletcher died seised, that by a residuary clause in his will, sufficient in terms to pass all the estate of which he died seised, he devised his property to his two daughters, Rebecca, who married Kittredge in 1773, and Joanna, the plaintiff's mother, who married Melvin in 1777 ; that by the birth of issue Melvin became seised of one moiety of the estate, for the term of his own life, as tenant by the curtesy initiate ; that in 1782, Melvin conveyed the estate to Chambers in fee, by a deed, to which the name of the wife was signed, but in which she did not appear as grantor, and the plaintiff now puts his claim upon the ground, that though his father purported to convey a fee, yet as to one moiety of which he was seised in right of his wife only, and that for his own life only, his deed enured only to convey away

the estate which he had ; that upon the death of the plaintiff's father and mother, that life estate was exhausted ; that the plaintiff had a right to enter, and that by his entry he acquired a seisin in himself, on which he now sues.

To encounter this *primâ facie* title, the defendants offer the evidence in question, to raise a presumption in fact, that prior or subsequent to the conveyance to Chambers in 1782, some conveyance or family settlement had been made by deed, which through time and accident has been lost, by which Melvin obtained a title in fee or a right and power to convey in fee, and therefore that his deed to Chambers vested an estate in fee simple in him by force and operation of the deed itself, if such title and power was conveyed to Melvin before his deed to Chambers, or by way of estoppel or confirmation, if made after such deed.

The general course of this evidence is, that the deed from Melvin to Chambers does not recite or describe the estate as being held in right of his wife, or derived from his wife, or her father, or through the means of Melvin's marriage ; it is left open to any presumptive evidence, that it might be derived from another source, or enlarged beyond that which his marriage alone would have given him ; that by his deed he professed to grant a fee simple, and not a life estate, the whole and not a moiety, and this with covenants of seisin and warranty ; that Kittredge and his wife, who upon the plaintiff's hypothesis must have been seised in her right of one moiety in fee, acquiesced without objection, for almost fifty years ; that the occupation of Chambers and those who have claimed under him, though not strictly speaking adverse to Melvin and wife, yet has been adverse to Kittredge and wife, who have acquiesced ; that Chambers erected valuable buildings and died seised of the estate ; that it was sold by the guardians of Chambers's children in 1814, as an estate in fee ; that the plaintiff and one of his brothers, who, upon his hypothesis, has the same title with himself, purchased a part of the estate derived through Chambers, for a full and valuable consideration. Many other circumstances were introduced to strengthen or impair the presumption of a grant, by which the estate of Melvin the elder was enlarged to a fee ; and this

consideration was relied on by the defendants, that if there was any such deed, if it were not recorded, it would have remained in the hands of Melvin and his representatives, and could not be presumed to have gone into the hands of Chambers, inasmuch as it is the usual custom in this State, when an estate is granted with warranty, for the grantor to retain the original deeds to himself, and not to deliver them to the grantee, as part of the muniments of title.

The defendants deduced a regular title to themselves, through Chambers and the sale made under license of court by the guardians of his children.

The Court are of opinion, that this evidence was rightly received and submitted to the jury, and they were rightly instructed as to its effect and bearing. And we are not prepared to say, upon a review of the evidence, that the jury came to a wrong conclusion. We think that this case, though in many respects very analogous to the case of *Jackson* v. *Mancius*, 2 Wendell, 357, as a question of evidence, differs from it in many particulars.

In considering the effect of circumstantial evidence in raising a presumption of a deed or instrument, lost by time and accident, as a grant, surrender or the like, such presumption will be much more readily raised, where it is consistent with an apparent title concurring, with actual occupation and possession, than where it is opposed to them. *Doe* v. *Cook*, 6 Bingh. 174.

So the length of time since the transaction took place, to which the inquiry relates, is of importance in weighing the circumstances, because, though no inference can be drawn from the silence and acquiescence of the tenant in remainder, during the existence of a particular estate, and though possession as against him cannot be deemed adverse, yet length of time and the consequent loss of documents, and of living memory from which the real truth of the transaction would most likely be ascertained, tend to give increased force and effect to those circumstances actually proved, which lead to a particular presumption of fact.

*Judgment on the verdict.*