## JOHN UHLER *vs.* GEORGE T. BROWNING.

1. Where a member of a firm draws his endorsed note payable to A., who endorses it as accommodation paper upon the credit of the firm, upon the representation by the drawer that it is for the use of the firm, it is no error for the court to charge that the jury had no right to infer, from such representation, that the note was for the use of the firm.

2. Nor is the admission of the drawer afterwards, and while the firm is in existence, any evidence that the proceeds of the note went actually to the use of the firm.

---

In replevin. Error to the Mercer Circuit.

Argued before the CHIEF JUSTICE and Justices VREDENBURGH, VAN DYKE, and WHELPLEY.

*Beasley,* for plaintiff in error.

*Halsted*, for defendant.

The opinion of the court was delivered by

VREDENBURGH, J.   This was a suit brought by Uhler against Browning, to recover possession of a canal boat. The pleas were—first, *non cepit;* secondly, property in the defendant.

The plaintiff claimed under a judgment before a justice against the firm of Parvin & Uhler and a constable's sale.   The constable testified that, on the 8th of July, the boat was lying at Baker's basin, and that he then sold it to the plaintiff under the execution, and that after the sale he delivered the possession to him.   Michael Uhler testified that he was present at the sale, and also the defendant; that the defendant refused to let the boat go, and said he had bought it.   On cross-examination he said, " I can't say that the defendant said he would not give up the boat—I told him he had no right to the boat; I think that is all I said to him.   All the defendant said was that he had bought the boat—he neither said or did anything more.   I was there when the boat was sold as that of Parvin & Uhler.   I think I told the defendant that he had no right to the boat.   This is all I said at that time—I do not remember anything else that was said or done at that sale."   This was all the evidence of a caption on the part of the plaintiff.   The defendant thereupon moved to nonsuit, which being overruled he took a bill of exceptions.

Whatever doubt there might have been whether this proved anything more than a mere abstract claim of right to the boat while it was in the possession of the plaintiff, was entirely removed by the defendant's evidence.

Mr. Marlat, on the part of the defendant, testified that in the later part of May, 1852, he bought and took possession of the boat, and that he and the defendant were present afterwards at the constable's sale.   When they were about taking her out into the canal, he, the witness,

went aboard of her, and took her and fastened her up, saying that the boat was his; that the constable was aboard of her when he went and locked her up; that the defendant had talked of buying her before the sale, but that they had not then concluded the bargain; that he afterward sold her to the defendant. From the whole testimony, taken together, the jury had a right to infer that after the constable had delivered possession to the plaintiff under his sale, Marlat and the defendant went aboard, and fastened the boat to the dock, the defendant saying he had bought her, and thus acting with Marlat in the actual caption.

The other bills of exception were raised upon the defendant's claim of title. He called upon the court to charge, that if the jury believed that if the accommodation note was the individual note of Parvin, still that they had a right to infer, from the representations of Parvin, made to Marlat at the time of endorsing the note, and from the testimony of Marlat, that the accommodation was made on the credit of the firm of Uhler & Parvin and for the use of the firm, and that if they should so find, that the firm would be bound by the transaction.

The court refused so to charge. Marlat upon this point testified, that in March, 1852, Parvin came to him with an accommodation note for $300, payable at ninety days, for him to endorse; that Parvin said the firm wanted to raise money for their business, and that he accordingly endorsed the note for Parvin as an accommodation note, but could not say whether the note was the individual note of Parvin or of the firm, and that he made the endorsement on the substance and strength of the firm. The note was discounted at bank, and taken up by Marlat. Before the note fell due, to wit, on the 30th day of May, 1852, Parvin sold the boat as the property of the firm, and delivered the possession to Marlat, to secure him against the endorsement.

The question is, was this sale by Parvin to Marlat to

secure this endorsement valid as against the judgment creditor of the firm.

This depends upon two questions. First, was the endorsement for the 'use of the firm ; and secondly, did the proceeds actually go to the use of the firm.·

*First.* Was the endorsement for the use of the firm? The note, for the purposes of the present question, we must assume to have been the individual note of Parvin. What proof is there that it was for the use of the firm? It is that Parvin came to Marlat with his own individual note for Marlat to endorse, saying that the firm wanted money for their business. The jury certainly could not infer from this evidence that the endorsement was for the use of the firm. The note itself is much stronger evidence that it was for his own use, than his own declaration at the time, that it was for the use of the firm. The one is written, and the other merely verbal evidence of whose use it was for, and certainly the written evidence is the best. It was very ingeniously argued that Parvin's declarations at the time of the endorsement might be considered as the confession of one of the firm at the very time of the endorsement. If this could be so, every written contract might be varied in its effect, not by what was written, but by what was said when the contract was made. What was said at the time of the endorsement cannot properly be called a confession. It is part of the *res gestæ*, but merged in the written contract. A confession is an admission of something done antecedently.

Suppose Marlat, instead of endorsing this note, had given his own note to Parvin, could he have proved that the note was for the benefit of the firm by the allegation of Parvin, at the time, that the note was for the use of the firm? The note says, upon its face, that it was for the use of Parvin, and we would thus allow Parvin to contradict the language of the written contract by his own verbal declations, that it was not for his benefit, but that of the firm. But suppose we call it a confession, what one is the jury

to go by, the verbal or the written one ? His written confession was, " I promise to pay $300." The effect is to change " I " into " we," a separate into a joint contract, by the confession of the maker at the time of making the note. The court were asked to charge, that while Parvin did one thing, he confessed that he did another, and to find for the confession against the fact. Nor do I see how the case is altered by calling upon the court to charge, that if the jury believed the endorsement was on the credit of the firm it was liable. If it was not for the *use* of the firm it was immaterial, and if it was, we have already considered the question in that light.

*Secondly.* Did the proceeds actually go to the use of the firm ? The only proof offered on this point was the declarations of Parvin afterwards, while the firm was yet in existence, that the proceeds so went. This is not within the rule that admits the confession of one partner against the other. If it were it would be the easiest thing for any partner at any time, by a simple admission, to cast all his individual debts upon the shoulders of the firm to the destruction of all the partnership creditors. I cannot distinguish this case from that of *Thorn* v. *Smith*, 2 *Wend.* 365.

There was no evidence before the jury from which they could legally infer either that the note was endorsed for the use of the firm, or that its proceeds actually ever were so disposed of.

Let the judgment be affirmed.