## HUNTER et al. *v.* COCHRAN.

If two men have surveys which *interfere* with each other, and he, whose warrant and survey are *junior*, pays the taxes on all included in this survey, and he, who has the senior warrant and survey, does not, and the 'lands surveyed to him are sold for the taxes, such sale will pass no title to the *interference*, on which the tax has been paid by the other. It is the unseated land, and not the owner, which is charged.

Where one enters under a sale for taxes, where the taxes had been paid previously to the sale, he enters without right.

or a defendant to protect himself in possession, by showing an outstanding title, that title must be a valid and subsisting one, not one abandoned, or barred by the statute of limitations.

ERROR to Common Pleas of Perry county.

*June* 4. Ejectment, for a tract of land, in which, Thomas Cochran, the defendant in error, was plaintiff, and John and James Hunter, the plaintiffs in error, were defendants.

The plaintiff, on the trial, gave in evidence a warrant to James Reed, senior, dated the 6th of January, 1794, granted upon his application of the 23d of August, 1793. He also gave in evidence a survey upon this warrant, of two hundred and seventy acres, on the 27th April, 1795, and a warrant to James Reed, junior, of the same date with the first, and survey upon it of one hundred and twenty-five acres. He also showed proceedings in partition in the Orphan's Court of Cumberland county, by which the lands surveyed upon both these warrants were confirmed to James Reed, junior, on the 15th of September, 1812; a deed from James Reed to Joseph Hunter, for the same lands, dated 19th February, 1813; a deed from Joseph Hunter and wife to John and James Hunter, on the 26th of February, 1814; and proved a partition of the land between James and John Hunter; and a subsequent sheriff's sale of James Hunter's portion to the plaintiff, the 6th of February, 1823. It was

also in proof, that the land claimed in this ejectment is within the lines of the Reed survey; that, at an early date, a house was built within its boundaries, which was occupied; some forty acres cleared upon it, an orchard planted, and grain raised upon it, as late as 1817 or 1818; that the original owners of the Reed warrant, and those claiming under them, have continued to exercise all the acts of ownership over this property, thought necessary, such as cutting timber. saw-logs, rails, and rail-timber, for more than thirty years. The plaintiff also proved, under objection, the payment of taxes since 1823. The defendant resisted a recovery, and gave in evidence a warrant to John Little, for two hundred acres of land, dated 28th of December, 1774; a survey of two hundred and sixteen acres, seventeen perches, on the 12th March, 1775; an assessment of this land, for taxes, in the name of William Rawle, for the year 1830; and a sale of it to Samuel Albright, on the 11th June, 1838, for taxes alleged to have been due and unpaid for the years 1834 and 1835, to wit: a road tax, of 45 cents, for 1834; $1 20 county tax; 40 cents state tax; and county school tax, for the year 1835. He also showed a deed, from Samuel Albright and wife to him, dated the 1st of September, 1844. Upon these facts, the defendants assumed two grounds of defence, which are embraced in the following points, upon which they requested the court to charge the jury:—

" 1. If the land in question was appropriated to John Little, by warrant and survey duly executed and returned, as early as 4th of May, 1775, the subsequent warrant and survey to James Reed, returned on the 27th of April, 1795, so far as it included and interfered with John Little, gave no title to the warrantee; and as the plaintiff must recover upon the strength of his own title, he cannot recover in this case, because the defendant, independent of his treasurer's title, has shown a better outstanding title than that of the plaintiff.

" 2. That when two tracts of land interfere with each other, the title to one being senior and superior to the other, and the taxes are paid by the owner of the junior and inferior title, and not paid on the other, but the land is sold by the treasurer, for non-payment thereof, the payment of the taxes by the owner of the junior and inferior title shall be referred to the land to which he had title; and the sale of the senior and superior title, for the payment of the taxes assessed upon it, will vest a good title in the purchaser; and that these principles are applicable to the facts of this case."

? The court, (HEPBURN, President,) after stating the facts, as already stated, charged upon the second point of defendant, thus:

"In answering this point satisfactorily to our own minds, it is necessary to keep in view certain principles, already settled in Pennsylvania, in reference to the sale of unseated lands. It is settled, that the charge of a tax upon unseated lands is no charge upon the person of the owner, but the land itself liable for the payment of it. It is also decided, that whether the tax be charged in the name of the real owner or not, is a matter of no moment; if charged upon the land and not paid, a sale of the land, for the unpaid taxes, passes the title to the purchaser. But unseated lands, like other property, are liable for only one set of taxes in each year, and if charged with those, and paid by the person claiming title, it is released from further liability, and the sale of it, for taxes charged in a different name, would vest in the purchaser no title. Your first inquiry, then, as a matter of fact, is, were all the taxes paid for the land in dispute, for the years for which it was sold to the defendant? If they were, the commissioners had no power to sell, and the purchaser from them got no title. That the taxes were paid for all the land embraced within the Reed survey, claimed by the plaintiff, would seem, by the evidence, to be clear. But the difficulty in this case arises from the fact, that Reed's survey interferes with an older one, in the name of John Little, and the defendant contends, that, although the taxes were paid on the interference in the name of Reed, he, being the purchaser of the land surveyed on Little's warrant, for taxes assessed upon it in the name of William Rawle, is entitled, by that purchase, to all the land embraced in Little's survey, it being the older and better title. We have no evidence of any connection between Little's and Rawle's claim; nor have we any as to the extent of that claim, farther than the assessment, which charges the same number of acres with those contained in Little's survey. But we have already told you, that it is the land which is charged, and not the owner, and that a sale of it, for unpaid taxes, passes not the right of any particular warrantee, but the title, to the extent that it is legally charged with taxes. How far, then, a charge of taxes, in the case before us, would be legal, so as to vest the title in the purchaser, becomes an important question. And we answer it, by saying, that the charge is only a legal one and justifying a sale, so far as the taxes have not been paid upon another separate and distinct survey. This, in principle, is settled by the case of Harper *v.* McKeehan, 3 Watts & Serg. 238. The commissioners have nothing to do with the interference of surveys, farther than to take care, that taxes are not twice enforced from the same land. In the case before us, a large portion of the John Little survey is beyond the limits of Reed's, and

Reed's greatly larger than that now in dispute. The taxes assessed upon Reed, if the evidence is believed, were paid; and to that extent, including this interference, the land was no farther responsible. The sale, therefore, in the name of Rawle, would only vest in the purchaser the balance of the Little survey, for the unpaid taxes of which it was sold. We decline, therefore, to give you the instruction prayed for in this point."

On the defendant's first point, thus:

"From what we have already decided, it is clear, that the entry of the defendant, in 1844 or 1845, within the boundaries of Reed's survey, under a treasurer's sale, was an entry without right; and to protect himself in his possession, the outstanding title must be a valid subsisting one; not one abandoned, derelict, or barred by the Statute of Limitations. Foust v. Ross, 1 Watts & Serg. 506. Such, under the facts and circumstances in evidence before us, is not the character of the outstanding title of Little, and no connection is shown between him and Rawle. No claim seems to have been made by Little to this land, since Reed entered upon it, more than forty years ago; and under these circumstances, with the others detailed in evidence, which I need not repeat, we refuse to give the instruction desired in this point.

"You will determine, from the evidence, whether the taxes were paid upon this land in dispute, for the years for which it was sold. If they were paid, the commissioners could not sell it, and the plaintiff is entitled to your verdict. Charge excepted to, by defendant."

The errors assigned here, were the answers of the court below, to the points of defendants.

*Watts*, for plaintiff in error.

*Graham*, contrà.

*June* 8. Per Curiam.—We affirm this judgment, for the reasons expressed by the judge who ruled the court below.

Judgment affirmed.