## Coxe *versus* Gibson and Hathaway.

There is nothing in reason or law to prevent an individual who holds a defective title from purchasing a better one at a tax sale.

Where the party stands in no relation of trust to the owner, and is implicated in no fraud against him, his measures to perfect his title by a purchase at a sale for taxes will not enure to the benefit of the owner.

ERROR to the Common Pleas of *McKean county*.

This was an action of ejectment by Richard S. Coxe against Lyman Gibson and Samuel G. Hathaway, for a tract of land in Shippen township, McKean county, containing 990 acres.

The plaintiff traced a regular chain of title from the Commonwealth to himself, and rested.

On the part of the defendants, a deed was given in evidence from Henry S. Chapin, treasurer of McKean county, to William S. Oviatt, dated 30th September, 1844, and also an assignment from Oviatt to Seneca Freeman, dated 29th December, 1846. Freeman conveyed to Ephraim Newland on the 15th April, 1848, and Newland to Eli Felt on the 20th August, 1848, and Felt to the defendants on the 27th February, 1849.

They also gave in evidence a deed from Samuel Smith, treasurer of McKean county, to William A. Williams, dated 20th August, 1850, for the same land, sold for the taxes of 1848 and 1849; and an assignment of the deed from Williams to defendants on the 20th January, 1851.

To invalidate these sales for taxes, the plaintiff gave in evidence articles of agreement between Richard S. Coxe and Brewster Freeman, dated 18th October, 1842, for the sale by Coxe to Freeman of this and other lands, at fifty cents per acre, and stipulating, *inter alia*, on the part of Freeman to pay the taxes on the land. He then called Brewster Freeman, who testified that Seneca Freeman had a knowledge of the contract given in evidence—had seen and read it, and proposed to purchase the tract of land in controversy, and one or two other tracts, on the terms specified in said contract. That he (witness) had given to Seneca Freeman a written memorandum proposing to let him have this and another tract provided he would pay Coxe for them and pay the taxes.

That this memorandum was returned to witness by Seneca Freeman and cancelled after Wm. S. Oviatt had purchased this land at treasurer's sale. That Seneca Freeman then requested witness to permit him to buy those lands from the purchasers at treasurer's sale and not to interfere—to which witness objected on the ground that Coxe might sue him on the contract, and that said Seneca Freeman replied if there was any trouble about it he would see that witness was not injured.

[Coxe *v.* Gibson and Hathaway.]

Plaintiff also called Wm. S. Oviatt, who testified that Seneca Freeman had a conversation with him in regard to redeeming this tract. That witness understood from him or Brewster Freeman, or both, that he (Seneca Freeman) had the right to redeem. That on the 20th or 30th of September, 1846, said Seneca Freeman proposed to witness to extend the time of payment one year. And in consideration thereof agreed to pay him something more than the redemption-money.

That the arrangement was put in writing and the amount agreed to be paid was paid at the time stipulated, and the deed assigned by witness to said Freeman.

Seneca Freeman was then called by defendants and examined for the purpose of contradicting the evidence of Brewster Freeman and Wm. S. Oviatt.

He testified that he bought the treasurer's deed for No. 4964 of Wm. S. Oviatt. That at the time he bought, he informed Mr. Oviatt distinctly that he wanted to buy and not to redeem, and that at that time he had nothing to do with the lands. That he selected the lot he desired to purchase and agreed to pay $50 for it, and was to have a credit of three months. That if the lot was redeemed he was to have the redemption-money, and if not redeemed, Oviatt was to make him a deed provided he paid the purchase-money by the time stipulated. That he (witness) was to pay the $50 whether the land was redeemed or not, unless upon his failure to pay by the time stipulated Oviatt preferred retaining the land to compelling payment by suit. Witness further stated that he had no arrangement with Brewster Freeman in regard to the purchase from Oviatt, and never had agreed to stand between him and Coxe.

William A. Williams testified as follows:—

I purchased three tracts at treasurer's sale in 1850. About the time of the sales Mr. Felt called on me and wished me to lend him the money to pay the taxes on three tracts. I told him I could not lend him the money, but would get the sales continued till he could raise it. They were continued. Felt did not raise the money, and I became the purchaser. I think the tract in suit is one of the three I bought at Felt's request. I made the assignment at request of Mr. Felt, either in writing or in person, upon receipt of the redemption-money. Don't recollect who I sold to; presume Gibson and Hathaway. There was nothing paid for the lands but the redemption-money. Might have given me one dollar for making the assignment. I bought the land at request of Mr Felt, and conveyed at his request. I received twenty-five per cent. in addition to what I paid. I presume so.

Cross-examined: I understood Felt was the owner or had a claim some way to the land. It may be that Felt wanted I should buy this lot. Don't recollect that he did. Don't recollect that

[Coxe *v.* Gibson and Hathaway.]

he said anything about the Coxe title.  I don't know Sexton, who is a subscribing witness to the deed.

The court below (WHITE, P. J.), after stating the facts, instructed the jury as follows :—

"According to plaintiff's evidence the arrangement of Seneca Freeman with Oviatt constituted a redemption.  According to defendant's evidence it constituted a purchase.  The question therefore arising upon the title of defendants derived through Oviatt are questions of fact, which, if deemed material and important, we would submit to the jury with the simple instruction that their correct determination depends upon the credibility of the witnesses.  The evidence of Seneca Freeman being contradictory to that of Brewster Freeman and Wm. S. Oviatt.

"But we deem it unnecessary to refer the question of the credibility of these witnesses to you, as the title set up by defendants derived through Wm. A. Williams, which is wholly independent of this evidence, is in the judgment of the court a good and valid title.

"Williams purchased at treasurer's sale for the taxes of 1848 and 1849.  His deed bears date the 20th of August, 1850, and the consideration therein mentioned is $34.64.  He bought at the request of Eli Felt, who had purchased the Seneca Freeman title from E. Newland on the 20th of August, 1848, and conveyed it to the defendants on the 27th of February, 1849.  It is not alleged that Felt had any knowledge of any complicity between Seneca and Brewster Freeman in the procurement of the title from Oviatt, or of the circumstances now given in evidence to defeat that title.  We think no substantial reason can be assigned why he might not purchase at treasurer's sale to confirm and strengthen his own title, or why he might not procure another to purchase for him under the terms stated by Mr. Williams, and direct a transfer of the deed to his vendees for the purpose of securing their title.  But even if he had known all the facts disclosed in this trial, we conceive it would still be difficult to show why he might not at any time abandon the defective title he had acquired, and purchase a better one, or employ some one to purchase for him.  It cannot be that because he was so unfortunate as to purchase a title which had been invalidated by its transmission through Seneca Freeman, he was therefore incapacitated from acquiring a title through any other source.

"It is said by plaintiff's counsel that the transfer of Williams conveyed no title, for the reason that it was a redemption, and so treated by the parties.  We do not so understand it.

"Williams purchased for Felt, probably with the expectation that Felt would redeem.  But he did not redeem, unless every transfer of a treasurer's deed made before the expiration of the equity of redemption constitutes a redemption.  Williams made

[Coxe v. Gibson and Hathaway.]

the transfer to Gibson and Hathaway, as he alleges, at the request of Felt, and they paid him the consideration for it. That consideration was less than the amount of redemption-money—the taxes and costs being $34.64—the redemption-money $43.30, and the consideration paid by Gibson and Hathaway to Williams, $38.12. What is meant by the redemption of a tract of unseated land sold for taxes? It is the payment by the owner (or some other person authorized by him) within two years after the sale; of the amount of taxes and costs for which the tract was sold and twenty-five per cent. in addition thereto to the treasurer of the county. A legal tender of this sum, should the treasurer refuse to receive it, and payment to the treasurer's vendee may answer as equivalents—but a tender to the latter would not. An agreement to buy his title is not a redemption.

"In the case of Coxe v. Sartwell an assignment of a treasurer's deed procured upon the representation of the assignee that he had the right to redeem, and upon the suggestion, and for the benefit, in part, of one who was bound to pay the taxes and had acted in bad faith towards the owner, was held to be a redemption. But who is injured by the treasurer's sale to Williams, and the transfer of Williams to Gibson and Hathaway? Coxe surely had no just right to expect Felt or Williams, or Gibson and Hathaway, to pay his taxes or redeem his lands. There existed no privity of contract between him and them, and no obligation by which they were required to do so rested upon them. Nor does Williams complain that Felt took advantage of him by representing that he had a right to redeem. On the contrary, Williams had purchased on his own suggestion under an arrangement made for Felt's benefit, and all that he required or expected was the money he had advanced, and compensation for its use, according to the terms of that arrangement.

"If Felt had refused to carry out the arrangement and the redemption-money had not been paid by Coxe, or some one in his behalf, within the period required by law, will it be pretended that Williams would not have acquired a good title as against Coxe? And if so, why would his title be less perfect in Eli Felt or his vendees? Williams did nothing more in receiving the money he had advanced and transferring his deed to Gibson and Hathaway, than he considered himself bound to do under his agreement with Felt. But even if he had done more, what is that to Coxe? Williams does not complain of having been overreached or defrauded in the transaction. He undoubtedly knew what he was doing and what his rights were—and although it might have been his understanding that Felt was to redeem, yet Gibson and Hathaway, who paid him his money, took an assignment of his deed and not a receipt for redemption-money—and as Williams made

[Coxe *v*. Gibson and Hathaway.]

the assignment without objection, what right has Coxe to object and to claim that this is a redemption and not a purchase?

" He surely was not prevented from redeeming or misled by the acts of these parties—for there was no entry upon the treasurer's books or record elsewhere of the assignment from Williams to defendants, nor can it be alleged that either Brewster Freeman or Seneca Freeman had any interest in common with Gibson and Hathaway in their purchase, or with Wm. A. Williams or Eli Felt. The title therefore to this tract of land became vested in Gibson and Hathaway by the deed of Samuel Smith, treasurer of McKean county, to Wm. A. Williams, and the assignment thereof to them by Wm. A. Williams, and they are entitled to your verdict."

The jury found for the defendants.

The errors assigned here were to the charge of the court in ruling that the land became vested in the defendants by the treasurer's deed to William A. Williams, and his conveyance of the land to them.

*L. D. Wetmore*, for plaintiff in error.—The transaction was a redemption. Williams became the purchaser at the treasurer's sale at the instance of Felt, who was bound to protect the title of the defendants, his vendees. He wished Williams to pay the taxes, and he permitted the land to go to sale that he might hold the title as security. When he received the amount of the redemption and assigned the treasurer's deed, he was not in the position of the holder of a title—parting with the same on the footing of a right, and receiving in return a valuable consideration.

The case of Cox *v*. Sartwell rules this. There Oviatt purchased at treasurer's sale, and before the time for redemption had expired, Cowley, who claimed the land, paid the amount of the redemption and took an assignment of the treasurer's deed. Oviatt treated with Cowley on the ground that he had a right to redeem.

The nature of the transaction between Williams and Felt was a *fact* to be found by the jury. If it was a means adopted for the payment of the taxes, or a redemption, it conferred no title. The owner is estopped from obtaining title by refusing to pay his taxes.

*Johnson*, for defendants in error.—A misapprehension of the principle of Cox *v*. Sartwell has created great trouble and distrust in relation to treasurer's deeds. It is supposed by many to decide that every transfer to an owner or his order, before the time of redemption has expired, and especially if the amount paid is the sum required to redeem, is a redemption. If that is not the point

[Coxe *v.* Gibson and Hathaway.]

decided, there is no ground to say that the defendants' title is not good.

This land was sold for taxes, which neither Felt nor the defendants were bound to pay. A portion of the taxes for which it was sold, were assessed before Felt became the owner. What rule of law or of policy forbade him to become the purchaser, for the purpose of strengthening or perfecting his title?

Williams bought for Felt, and held as a trustee for him, and conveyed to defendants at his direction. To call this transaction a redemption is a gross misnomer.

These parties were in no privity with, and owed no allegiance to Coxe. As to them, he is in default. Even if the origin of their first title had been tainted with the fraud of Brewster Freeman, the defendants were in no way implicated; and had, therefore, a right to become purchasers. It has never yet been decided, and probably never will be, that a man claiming land by a title which is questioned by some adverse claimant, cannot become the purchaser of the disputed territory at a tax sale, and thereby acquire a good title. This would involve the absurdity that each claimant would have a claim on his adversary to keep the taxes paid, and failing to do so, acquire no title at a sale for their non-payment.

The opinion of the court was delivered by

WOODWARD, J.—It seems to us that the Williams' title was unimpeached, and the court did well to rest their judgment on that. Williams bought at the request of Felt, who had acquired the suspicious title of Freeman before; but there is nothing in reason or law to prevent a man who holds a defective title from purchasing a better at a treasurer's sale for taxes. It is a very common remedy for defective titles. Williams then held a good title in trust for Felt, and he conveyed it to the defendants. Had there been anything to implicate Felt with the Freemans—if he had sustained the same relation to Coxe which they did—his measures to perfect his title might have enured to Coxe's benefit; but for aught that appears of record, he was under no obligations to Coxe, and was as free to acquire title to the land as any other man.

      The errors assigned have not been sustained, and the judgment is affirmed.