# H. B. Powell and J. F. Powell, Appellants, *v.* John Lantzy and The Blubaker Coal Company.

173   543
185   335
173   543
199   570
173        543
218         96
173    543
f39SC¹473
39SC 475

*Tax sale—Title—Trust relation.*

The owner of mineral rights holding by virtue of a reservation in a deed is neither a tenant in common, nor a joint tenant with the owner of the surface; each has a separate estate; each is separately subject to taxation, and there is no equity growing out of the relation which they bear to each other which will prevent one from buying the estate of the other at a tax sale.

A sale of unseated lands for taxes which were assessed before the severance of the title to the surface from that to the minerals, and a purchase of the whole by the owner of the surface passes a good title to the whole as against the owner of the minerals. No relation of confidence exists between the owners of the different interests which gives rise to a duty which equity will enforce through the medium of a trust.

Argued Oct. 17, 1895. Appeal, No. 248, Oct. T., 1895, by plaintiffs, from judgment of C. P. Cambria Co., March T., 1895, No. 136, for defendants on facts admitted. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment to recover coal and other minerals underlying a tract of unseated land. Before MILLER, P. J., of the 35th judicial district, specially presiding.

The case was tried by the court without a jury under an agreement in which the facts were admitted.

The "Admission of Facts" filed by the parties was as follows:

For the purposes of this suit it is admitted that the land described as 255 acres, 158 perches, situate in Susquehanna township, Cambria county, Pa., for the coal and minerals in which land this suit has been brought, is part of a larger tract of land, warranted and surveyed in the name of George Eddy, for which a patent dated May 10, A. D. 1794, was granted by the commonwealth of Pennsylvania to James C. Fisher, enrolled in patent book No. 21, page 220. That by sundry conveyances, the title to said land became vested on December 14, 1872, in fee simple, in Edward A. Irvin.

That by sundry subsequent sales and conveyances made on or before the 5th day of November, 1883, all the title and ownership of said piece of land was on the 5th day of November, 1883, vested in fee simple in Patrick & Anthony Flynn.

That on the 5th day of November, 1883, the said Patrick & Anthony Flynn, with their wives, executed two deeds, viz : the one deed to George W. Jose for the said land, excepting and reserving, however, all the coal and minerals, with right of ingress, egress and regress to take the same as appears in said deed recorded in Cambria county, Pa., in deed book 50, page 789. The other deed of same date to H. B. Powell and J. F. Powell for the undivided one half part of all the minerals of every kind in said tract of land of 255 acres and 158 perches, as the same appears in said deed recorded in Cambria county in deed book No. 51, page 554. To which deeds or records thereof reference is hereby made for more full information as to the contents thereof.

That November 26, 1883, the said George W. Jose, conveyed in fee simple to John Lantzy (the present defendant) the said land as it had been conveyed to said Jose from said Patrick & Anthony Flynn, excepting therefrom all the minerals reserved by said P. & A. Flynn in their deed to said Jose; see said deed recorded May 26, 1884, in Cambria county in deed book 52, page 99, etc., to which reference is hereby made for more full information as to the contents thereof.

June 10, 1884, treasurer's sale for unseated taxes of the years 1882 and 1883 was made to John Lantzy of this land for tax· and cost $43.54. Said tax and sale appear on the treasurer's book among lands of Susquehanna township as follows :

| Joseph M. Miller. | YEAR. | VAL. | CO. | ROAD. | SCHOOL. |
|---|---|---|---|---|---|
| Acres 242, James Thompson | 1882. | $484. | 7.26. | 6.29. | 7.26 |
| "      242,      "          " | 1883. | 484. | 7.26. | 4.84. | 7.26 |
| Sold June 10, 1884, for tax and costs $43.54. | | | | | |

J. A. K., TREAS.

November 24, 1888, by deed recorded January 17, 1889, in deed book 66, page 361, sale of coal in said land was made by said John Lantzy to Blubaker Coal Co., consideration $2,857. The said Coal Co. having such notice of the title as the records show and taking security from Lantzy to indemnify them against loss by reason of failure or defect in his title. By deed dated 1894, December 10, and acknowledged December 14 and 18, 1894, conveyance was made from P. & A. Flynn and their wives to H. B. and J. F. Powell for their remaining undivided one half part of all the minerals in said land as by reference to said deed will appear.

December 20, 1894, after the delivery of the last mentioned deed, this ejectment suit, No. 136, March term, 1895, was brought by H. B. and J. F. Powell v. John Lantzy and the Blubaker Coal Co. for the coal and minerals in said land.

It is further agreed that the deeds and records herein referred to, be regarded as evidence in the case with the same force and effect as if attached to this paper and made part of it; thereby to show more fully and accurately the contents of said deeds and records so far as they are material to the questions arising in this suit. The said land being unseated and the above recited deeds having been made for valuable consideration.

It is further agreed by the parties to dispense with a trial by jury in this case and to submit the decision of the case to the court having jurisdiction thereof, and that said court shall hear and determine the same; and that the judgment thereon shall be subject to a writ of error or appeal to the Supreme Court, as in other cases.

The court entered judgment for defendants.

*Error assigned*, among others, was entry of judgment as above.

*J. B. McEnnally*, for appellants.—When several persons have a joint or common interest in an estate, one cannot purchase an

incumbrance or an outstanding title, and set it up against the rest for the purpose of depriving them of their interests: Weaver v. Wible, 25 Pa. 270.

The objection relied upon by the defendants is that Lantzy was not a tenant in common with Powells and Flynns at the time of the tax sale on the 10th of June, 1884. Our answer is that it was not necessary that they should be tenants in common or joint tenants at that time in order to create such relations as would render it inequitable for Lantzy to use the tax title obtained by him at that sale to deprive Powells and Flynns of their interest in the land: Lloyd v. Lynch, 28 Pa. 419; Smiley v. Dixon, 1 P. & W. 439.

The case of Neill v. Lacy, 110 Pa. 294, is relied on by the defendants as showing that the tax sale to Lantzy extinguished the rights of Powells and Flynns, who owned the minerals. In reply we say it decides nothing of the kind. In the first place, in the case of Neill v. Lacy the taxes were not assessed until more than eight years after a severance had been made between the surface and the minerals. The severance was made in 1871, the taxes referred to were for the years 1880 and 1881. In the second place no tax sale was ever made.

*F. A. Shoemake, Alvin Evans* with him, for appellees.—There was a severance of the estates by the deeds executed by Flynns to Jose and Powells on November 5, 1883, one vesting the surface in Jose and one a half interest in the coal in Powells: Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114.

. After severance they formed distinct parts or separate properties, as much as the divided portions of what was once a single tract of land: Penna. Salt Mfg. Co. v. Neel, 54 Pa. 9; Neill v. Lacy, 110 Pa. 294; Weaver v. Wible, 25 Pa. 270.

One tenant in common can purchase from the holder of a tax title and hold it against his cotenant: Lewis v. Robinson, 10 Watts, 354.

After severance the mineral right is an independent interest in land, it forms a distinct possession, is held upon a distinct title, and is as much the subject of sale, devise, inheritance and separate taxation as the surface land: Caldwell v. Copeland, 37 Pa. 427.

A vendee, under an article of agreement, who buys at a sher-

iff's sale, on a prior incumbrance, to save his title, is not a trustee for the vendor; and the vendor cannot maintain ejectment: Thompson v. Adams, 55 Pa. 479.

The owner of the surface can no more be held for the taxes on the mineral strata after a severance, than the owner of the minerals for the taxes on the surface: Sanderson v. Scranton, 105 Pa. 469.

OPINION BY MR. JUSTICE FELL, February 17, 1896:

This is an appeal from the judgment entered in an action of ejectment brought to recover the coal and minerals in a tract of land in the possession of the defendants. From the admitted facts it appears that in September, 1883, Irvin conveyed the tract to Flynn. In November, 1883, Flynn conveyed to Jose, excepting and reserving the coal and minerals, and at the same time conveyed the one half part of all the minerals reserved to H. B. and J. F. Powell. In the same year Jose conveyed to John Lantzy, one of the defendants. At the time of the conveyance by Irvin to Flynn the taxes for 1882 and 1883 were unpaid, and in 1884 the land was sold for these taxes and purchased by Lantzy. In 1888 Lantzy conveyed the coal to the Blubaker Coal Company, the other defendant. In 1894 the plaintiff purchased of Flynn the remaining half interest in the coal, and brought this action of ejectment. The land was unseated, and the legal title to the entire property was in Irvin at the time the taxes for 1882 and 1883 were assessed.

The case presented is that of a sale of unseated lands for taxes which were assessed before the severance of the title to the surface from that to the minerals, and a purchase of the whole by the owner of the surface; and the question is whether the title so acquired is good as against the owner of the minerals. The regularity of the proceedings which resulted in the sale is not questioned, and the validity of the title depends upon the question whether the defendant Lantzy was forbidden by any rule of legal policy to acquire a title at a sale for taxes charged in part against his own land, and whether the title so acquired, if otherwise good, is affected by any equity growing out of the relation which the owner of the surface and the owner of the minerals bore to each other.

The rule that one cannot, by a purchase at a tax sale caused

by his failure to pay taxes which he owed the state or which he was otherwise legally or morally bound to pay, acquire a better title or a title adverse to that of other parties in interest, rests upon the principle that one cannot profit by his own wrong and build up or acquire a title founded upon his own neglect of duty. The rule has been recognized in this state in Chambers v. Wilson, 2 Watts, 495; Coxe v. Wolcott, 27 Pa. 154, and Reinboth v. Zerbe Run Co., 29 Pa. 139, and a multitude of cases in other states, most of which will be found cited in Black on Tax Titles, sec. 273, note.

The purchase operates as a payment only: Cooley on Taxation, p. 501, second edition. The rule however should be restricted to cases where it was the duty of the purchaser to pay the tax: Oswald v. Wolf, 129 Ill. 200; Lybrand v. Haney, 31 Wis. 230; Sands v. Davis, 40 Mich. 14; Moss v. Shear, 25 Cal. 38. In the opinion in Blackwood v. Van Vleit, 30 Mich. 118, Judge Cooley, criticising the decision in Lacey v. Davis, 4 Mich. 140, in which it was held that a person entering into possession of land under a claim of title while a tax which was a lien thereon was unpaid could not acquire a title by purchase at a subsequent sale for the tax, says that in the cases relied on in Lacey v. Davis, the party who was precluded from acquiring a title at a tax sale was either in possession of the land when the tax was assessed and upon that ground was chargeable with its payment or by contract or otherwise it had become his duty to other parties concerned to make payment, and " To preclude any person from making and relying on a purchase of land at a tax sale there must be something in the circumstances of the case which imposes on him a duty to the state to pay the tax, or something which renders it inequitable as between him and the holder of the existing title that he should make the purchase." In speaking of taxes on unseated lands which were not a charge against the owner it is said in Coxe v. Gibson, 27 Pa. 160, that there was nothing in reason or law to prevent the holder of a defective title from purchasing a better one at a tax sale. The taxes under which the sale was made in this case were on unseated lands, and there was no personal responsibility on the owner therefor; the land alone was liable: Hunter v. Cockran, 3 Pa. 105; McCormack v. Russell, 25 Pa. 185; Logan v. Washington Co., 29 Pa. 373.

Was there a community of interest which gave rise to a duty, or anything in the relation of the parties which made the purchase by Lantzy inequitable? The rule which applies to a trustee or to one occupying a fiduciary relation is stated in the notes to Keech v. Sanford, 1 Leading Cases in Equity, p. 62, 4th Am. ed., to be this: " Whenever one person is placed in such relations to another, by the act or consent of that other or by the act of a third person or of the law, that he becomes interested for him or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." And the rule is said to apply as far as the principle and morality and policy upon which it is founded extend. In this state it has been enforced against joint tenants and tenants in common in a number of cases, among them Weaver v. Wible, 25 Pa. 270; Lloyd v. Lynch, 28 Pa. 419; Gibson v. Winslow, 46 Pa. 380, and Maul v. Rider, 59 Pa. 167, where there had been the purchase of an outstanding title, or of the interest of one of the parties by the other at a sheriff's sale. But the owner of mineral rights holding by virtue of a reservation in a deed is neither a tenant in common nor a joint tenant with the owner of the surface. Each has a separate estate: Neill v. Lacy, 110 Pa. 294; see also Plummer v. Hillside Coal & Iron Co., 160 Pa. 483, and Algonquin Coal Co. v. Northern Coal & Iron Co., 162 Pa. 114. After the severance of the surface from the minerals by a conveyance they form separate estates: Caldwell v. Fulton, 31 Pa. 475; Caldwell v. Copeland, 37 Pa. 427; Penn. Salt Co. v. Neel, 54 Pa. 9. And each is separately the subject of taxation: Logan v. Washington Co., 29 Pa. 373; Sanderson v. Scranton, 105 Pa. 469; Petrikin v. Myton, 3 Penny. 216.

When in 1884 the sale for taxes took place the estates were distinct, and the division was as complete as if it had been made by lines on the surface. They were separately the subjects of possession, enjoyment, incumbrance and taxation. There was no community of interest between the owners. The whole was subject to a claim for taxes which existed before they acquired title, and which neither was under any obligation to the state to pay. If either had paid it he could not have recovered of the other his proportionate share: Neill v. Lacy, supra. And

no right to contribution could be enforced as in the case of a mortgage, and there was no means by which the tax could be apportioned. Lantzy was in a position in which he was obliged to pay a claim which he did not personally owe, and which was in part a charge upon the land of another from whom he could not require repayment, or to buy or lose his title. A vendee under articles who buys at a sheriff's sale to save his title is not a trustee for the vendor: Bispham's Equity, sec. 93 ; Thompson v. Adams, 55 Pa. 484, although the vendor may be permitted to recover under the contract.

Any moral obligation to agree and jointly pay the tax, each contributing his just share, rested equally upon the owners of the different parts, but there was no legal duty on either to do this. It was their separate, not their joint, interests which were in peril. They were not interested for or with each other, and no relation of confidence existed between them which gave rise to a duty which equity will enforce through the medium of a trust.

The learned judge of the common pleas was right in entering judgment for the defendant.

The assignments of error are overruled and the judgment is affirmed.